## DiGenovario, Administratrix, v. DiBono et al.

*Todd Daniel* and *Henry Temin,* for plaintiff.
*Rawle & Henderson,* for garnishee.

MacNeille, P. J., June 19, 1947.—This action originally arose out of an accident which happened on

September 30, 1945, while original plaintiff, Paul DiGenovario, was riding in an automobile owned by him but operated by defendant, Edward DiBono. An action of trespass was instituted against defendant and the issue was tried before the court without a jury and a finding was made for plaintiff in the sum of $10,-177.95. Exceptions to the finding were filed and dismissed in a per curiam opinion dated February 6, 1947. Judgment was entered on the finding and attachment sur judgment was issued against defendant-garnishee. Plaintiff filed interrogatories which were answered by defendant-garnishee. Plaintiff then filed a rule for judgment for want of sufficient answers. The court, by order of May 1, 1947, ordered an amended answer filed within 20 days or rule absolute. An amended answer was filed and a rule for judgment for want of sufficient amended answer was filed. On June 5, 1947, by stipulation of counsel, approved by the court, it was agreed that plaintiff's rule be discharged and that the court finally determine the issues raised by the attachment upon the record taken in the trespass action together with the interrogatories and answers in these proceedings.

On February 28, 1947, a suggestion of death of Paul DiGenovario was filed and Katherine DiGenovario, administratrix of the estate of Paul DiGenovario, was substituted as party plaintiff.

The court is now considering the issues raised in the attachment sur judgment proceedings. The answer of the insurance company, garnishee, admits the issuance of a liability policy to DiBono, but denies that the policy covered the accident in question. The policy issued to DiBono contained the following clause:

"Such insurance as is afforded by this policy for bodily injury liability . . . applies (1) to the named insured . . . with respect to the operation of any other private passenger automobile by such named insured. . . ."

But, as amended by endorsement prior to the accident, the policy reads:

"Such insurance as is afforded by this policy for bodily injury liability . . . applies (1) to the named insured . . . with respect to the use of any other automobile by or in behalf of such named insured. . . ."

Garnishee's defense to the present action is set forth in part in the answer at paragraph 7(c) as follows:

"To sub-part (c) of the seventh interrogatory, garnishee answers: No. On the contrary, garnishee is informed and believes, and accordingly avers, that plaintiff at the time of his injuries was riding in his own motor vehicle, and that the motor vehicle named in the automobile liability insurance policy issued by garnishee to defendant was not involved in the accident which resulted in said injuries. Garnishee avers that plaintiff, Paul DiGenovario, together with Dominick DiBono and Daniel Leno, met and planned to take a trip to New York City; that these arrangements were made on September 20, 1945, to use DiGenovario's automobile for this purpose on September 30, 1945; that defendant, Edward DiBono, was not a party to these arrangements and had no knowledge of the same; that about midnight on September 29, 1945, the said DiGenovario, Dominick DiBono, and Leno, met and before setting out it was suggested that they request defendant to operate the automobile for them due to the fact that they would be driving most of the night and the said persons were tired whereas defendant was rested and would be able to do the driving for them; that they went to the home of defendant about 1.15 a.m. on September 30, 1945, and found him in bed and asleep; that they asked him to join the party and after persuasion he agreed; that the four men left Philadelphia about 2 a.m. in DiGenovario's automobile; and that about 4 a.m. on September 30, 1945, while defendant Edward DiBono was operating plaintiff's automo-

bile the accident occurred which resulted in plaintiff's injuries. At the time of the said accident, plaintiff Paul DiGenovario was seated next to defendant, Edward DiBono, in the front seat of the vehicle.

"Garnishee further avers in the premises that plaintiff's automobile was being operated at the time of the accident by defendant under the direction and control of plaintiff; that the said automobile was being then and there used by plaintiff for his own purposes and on his own personal business, and that defendant was then and there operating the said vehicle at the request of plaintiff solely in connection with such use of the automobile by plaintiff; and that defendant was driving the automobile as a favor and an accommodation to plaintiff without the intention of deriving any direct benefit for himself.

"Garnishee accordingly avers that defendant was 'operating' plaintiff's automobile at the time of the said accident, but that defendant was not 'using' plaintiff's automobile within the meaning or intention of garnishee's insurance policy on defendant's own automobile, under the 'use other cars coverage' contained in the said policy in the following provision thereof, to wit:

"Such insurance as is afforded by this policy for bodily injury liability . . . applies (1) to the named insured . . . with respect to the use of any other automobile by or in behalf of such named insured. . . ."

We are first called upon to examine the testimony taken in the trespass suit to determine in what relationship Edward DiBono stood with respect to the use that was being made of the car involved in the accident on September 30, 1945.

Paul DiGenovario, plaintiff, testified as to the arrangements made concerning the trip to New York the night of the accident. He testified that about 10 days to two weeks prior to September 30, 1945, Dominick DiBono, Daniel Leno, Edward DiBono and himself,

decided to make preparations to go to New York City, to visit Tom Dilio, who was a friend of all the parties and a particular friend of defendant Edward DiBono. It was decided between Dominick DiBono and plaintiff to use plaintiff's car as it had the best tires. At about midnight on September 29, 1945, the other three parties went to the home of Edward DiBono to pick him up and upon arriving found him in bed, but he arose, dressed and accompanied the other three. There was an arrangement made for the sharing of expenses "for gas and oil and eats". Upon leaving DiBono's home, plaintiff drove until they reached Sears, Roebuck on Roosevelt Boulevard en route to New York. At this point DiBono asked to drive the car. The first time plaintiff replied he would drive a while longer and upon the second request, DiBono was given the wheel. Plaintiff was then asked:

"Q. So you were in a position to give it to him any time you saw fit during the whole trip?

"A. I didn't see fit, because we were all going to enjoy ourselves, for the same purpose.

Edward DiBono testified that plaintiff, Dominick DiBono, and Daniel Leno came to his house on the night in question sometime after 11 o'clock. He was asleep at the time but agreed to make the trip with the other men. He stated that as soon as they left the house, plaintiff asked if he would drive since he was rested and he replied that he would. His testimony is that he immediately began to drive the car.

It is admitted by garnishee's answer that at the time of the accident DiBono was operating the vehicle involved in the accident. Thus the sole question for our determination is whether such operation by DiBono was "the use of any other automobile by or in behalf of such named insured". As stated supra, the policy of insurance as originally issued provided for coverage "with respect to the operation of any other private passenger automobile". The endorsement changed the

coverage to read "use of any other automobile". We believe the endorsement was intended to extend the coverage rather than limit the coverage. The garnishee contends that the word "use" implies that the person receives a benefit or has a purpose served. Even were we to agree that such an interpretation was correct our conclusion would not be changed. The evidence is clear that the trip to New York was being made for the mutual benefit or purpose of all four parties. The purpose of the trip was to visit a man who was a friend of all of the parties but who was particularly a friend of Edward DiBono. There is no competent legal evidence that DiBono accompanied the others solely for the purpose of driving the car and for the benefit of only the other parties. The trip was undertaken for the mutual benefit and purpose of all the parties and such being so the operation of the car by DiBono was a "use" by him of the automobile and within the coverage of the liability policy. Webster's New International Dictionary, 2nd edition, defines "use" to have among other meanings the following "To put into operation; to cause to function." We therefore conclude that it was the intent of the endorsement to broaden the coverage of the policy; that the term "use" included the term "operation" and that in any event were the term "use" to denote a benefit or purpose of the user, that DiBono's operation of the vehicle was partially for his own benefit and to fulfill a purpose he sought to accomplish.

Therefore, we find that plaintiff, by a preponderance of the credible evidence, has established the liability of garnishee on its policy, and we make the following:

### Order

And now, June 19, 1947, it is adjudged that garnishee is indebted to defendant in the sum of $10,000, with interest thereon to be calculated at the rate of

six percent per annum from December 30, 1946. Garnishee to pay the costs of these proceedings.

The prothonotary is directed to notify the parties hereto, or their counsel, and unless exceptions are filed within 10 days hereafter this order shall be treated as a final judgment.